BUJOSA & JAUME, PLAINTIFFS AND APPELLEES, *v.* SUCCESSORS OF GILET & ARCE, DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Ponce in an Action for Damages.

No. 2892.—Decided July 23, 1923.

MORTGAGE—ANTICHRESIS—LEASE—BREACH OF CONTRACT—FRAUD—CONSPIRACY—DAMAGES.—*A* held possession of *B's* property under an antichretic mortgage. Assuring *C* that he had no reason to apprehend that *B* would pay the amount of his debt within two years. and six months, *A* leased the property to *C* for that period of time on the condition that the lease should terminate if *B* did pay his debt. Thereafter *A* combined with other persons to reduce the amount of *B's* debt and voluntarily took steps to put an end to the lease. *Held:* That there was such a strong breach of legal and equitable duty as to make the action of *A* fraudulent and to give *C* an action for damages.

The facts are stated in the opinion.

*Mr. G. Rodríguez* for the appellants.

*Mr. R. Martínez Nadal* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

Successors of Gilet & Arce were the owners and holders of certain premises in Ponce by virtue of a contract of anticresis made with a man by the name of Orta who was indebted to them in the sum of $2,364.35. Apparently Orta could pay this debt at any time and recover the premises. While in possession of the said premises, Successors of Gilet & Arce leased them to the complainants, Bujosa & Jaume, for two years and six months, subject only to the condition that the contract of lease should cease if Orta paid the debt.

The appellees concede that if Orta voluntarily paid the debt the contract of lease would end. They also concede that there was nothing to prevent Successors of Gilet & Arce or whoever was the owner of the debt from cancelling the same. They maintain, however, that Successors of Gilet & Arce should do nothing voluntarily to put an end to the lease and they, in effect, insist that the appellants either initiated or

took part in a combination or conspiracy to put an end to the lease.

There was evidence tending to show that Bujosa & Jaume were establishing a new bakery in Ponce; that the indications are the bakers of Ponce did not want another rival; in any event that various persons and Successors of Gilet & Arce combined to reduce the amount of the debt owed by Orta and to accept from him the sum of $1,864 instead of $2,364.35 that he owed.

The complaint set up all these facts and more, sufficiently. That the evidence tended to show an intervention of Arce in this combination and of his or his firm's acceptance of a smaller sum than the amount due, there can be no doubt. The court below had a right from the direct and circumstantial evidence to believe that, after Gilet & Arce had made a lease to the appellees, the appellant firm combined with others and voluntarily took steps to end the lease.

This is not a case of parole evidence to vary the terms of a written contract. The appellees admit the terms of the contract. They are objecting to the action of the appellants by which they combined to put into effect force or forces which should terminate a lease solemnly contracted.

The essential words of the contract were:

"Fifth.—It is a condition of this contract that if the debtor, Arístides Orta y Pérez, at any time before the expiration of the term of this lease, shall pay to the lessors, Successors of Gilet & Arce, S. en C., the amount of the debt constituting the antichresis to which the property herein referred to is subject, from the time that the said payment is made the contract shall be rescinded and the lease made by this instrument shall immediately terminate, the lessees, Bujosa & Jaume, having only a period of thirty days within which to deliver all the property leased to them. On the expiration of this period Orta y Pérez shall have the right and is authorized to take immediate possession of his said property, without the necessity of complying with any previous requirements of any kind."

Appellees maintain that despite the right of appellants to release the debtor Orta of his debt the said appellants had no right voluntarily to accept less than the amount stipulated as against appellants. In other words, having made a contract for quiet enjoyment with appellees, the appellants could not accept a penny less without violating the terms of their contract. The appellees seem to be right, but we do not care to base our decision exclusively on this technical aspect of the case.

When appellants made the lease they, probably in good faith, assured the appellees that they had no reason to apprehend that Orta would pay the amount he owed during the existence of the lease. Thereafter the combination and the reduction of the debt arose with the active intervention of appellants. At least they joined in the combination, and in a combination or conspiracy the act of one is the act of all. For the lessors to do anything or countenance anything of the kind performed or countenanced here was a fraud on the lessee within the definition of fraud given in 26 C. J. 1059, as follows: ''Fraud in its generic sense, especially as the word is used in courts of equity, comprises all acts, omissions and concealment involving a breach of legal or equitable duty resulting in damage to another.'' Without necessarily accepting the foregoing definition as a final word, there was in this case such a strong breach of legal and equitable duty as to make the action of appellants fraudulent and to give the appellees an action for the fraud. In 26 C. J. 1101, it is also pointed out that representations becoming false may amount to fraud if the parties making the same intervene to make them false.

Appellants also allege error because of the failure of the court to make findings of fact, but *Paganacci* v. *Lebrón,* 24 P. R. R. 743, is decisive of this question.

With the exception of the amount of the damages the

other assignments of error are covered by our previous discussion.

As to the amount of the damages.   It turns out that Bujosa & Jaume arranged with Orta and his successor in title to retain the premises at an increased rental of $25 a month. The court therefore rendered judgment for 29 months at $25 a month or $725, the first month being at the rate of $200. The appellants say the calculation of 29 months is erroneous. We find, however, a statement in the record that Bujosa & Jaume continued baking at the increased rental for the remaining time independently of a presumption of a continuance of the increased rental.

The judgment must be

*Affirmed.*

Chief Justice Del Toro and Justice Aldrey concurred.

Mr. Justice Hutchison concurred in the judgment.

Mr. Justice Franco Soto took no part in the decision of this case.